UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KINGVISION PAY-PER-VIEW LTD.,
as Broadcast Licensee of the December 13, 2003,
Back to Back to Back Program,

                    Plaintiff,

           -against-

MICHAEL AUTAR, Individually and as
officer, director, shareholder and/or principal of
Gate Way Beer Garden, Inc. d/b/a Gateway Beer
Garden, and GATE WAY BEER GARDEN, INC.
d/b/a GATEWAY BEER GARDEN,

                    Defendants.
----------------------------------------------------------------x

**MEMORANDUM and ORDER**

04-CV-3469 (SLT)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 3 2006 ★
TIME A.M. P.M.

**TOWNES, United States District Judge:**

In August 2004, plaintiff Kingvision Pay-Per-View Ltd., a franchised cable television operator which markets and licenses the commercial viewing of boxing events on a pay-per-view basis, commenced this action pursuant to 47 U.S.C. §§ 553 and 605, alleging that defendants intercepted the signal for a boxing event – the December 13, 2003, Back to Back to Back Program (the "Program") – without authorization and showed it to patrons at Gate Way Beer Garden, a Brooklyn establishment with a capacity of approximately 50 persons. After defendant failed to answer or to otherwise respond to its complaint, plaintiff filed the instant motion for a default judgment, seeking statutory damages of up to $10,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); enhanced damages of up to $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and costs and attorneys' fees. For the reasons stated below, plaintiff's motion is granted and a judgment will be entered against defendants, jointly and severally, in the amount of $12,515.

The Consequences of Defendants' Default

"Where, as here, 'the court determines that [a] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.*, 30 F. Supp 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688, at 58-59 (3d ed. 1998)). Accordingly, by defaulting in this case, defendants have conceded, *inter alia*, that they (1) "willfully violated 47 U.S.C. § 605(a)" by intercepting plaintiff's signal, Complaint at ¶ 18, and (2) violated 47 U.S.C. § 553 by wilfully and illegally intercepting the Program "when it was distributed and shown by cable television systems." Complaint at ¶ 31.[1]

Although defendants have admitted liability under both § 605 and § 553, plaintiff "can recover under only one statute." *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 CV 1042 (GBD) (RLE), 2006 WL 728408, at *1 (S.D.N.Y. Mar. 20, 2006) (Report and Recommendation of Ellis,

---

[1] Plaintiff's complaint also alleges upon information and belief that defendants violated 47 U.S.C. § 605(e)(4) by "modif[ying] a device or utiliz[ing] equipment, knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for [another] . . . activity" prohibited by 47 U.S.C. § 605(a). Complaint at ¶ 23. However, very similar allegations were recently held to be insufficient to create liability under § 605(e)(4). *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB) (KAM), 2005 WL 2476264, at *5 (E.D.N.Y. Oct. 7, 2005). As the *Morales* Court noted, "several district courts have recognized [that] . . . § 605(e)(4) . . . is aimed at upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *Id.* (internal citations and quotations omitted). Allegations of the sort contained in plaintiff's complaint do not support a finding that defendants were "more than 'ultimate consumers' or 'end users' of an illegally modified device, as opposed to 'upstream manufacturers and distributors' of such a device" and, therefore, provide an insufficient factual basis for finding liability under § 605(e)(4). *Id.* Accordingly, even to the extent that plaintiff's motion can be read as requesting damages for a violation of § 605(e)(4), this Court declines to award such damages.

2

M.J.) (citing *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996)). Since §605(e) provides "far more severe penalties than those of § 553(c)," *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), plaintiff has elected to pursue remedies under § 605(e).

Damages Under § 605(e)

Section 605(e) provides, *inter alia*, that any person aggrieved by a violation of § 605(a) can bring a civil action in district court, in which the court:

> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of . . . [§ 605(a)];
>
> (ii) may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B)(i)-(iii). Subparagraph (C) permits the recovery of either actual damages under (C)(i)(I), or statutory damages under (C)(i)(II). Given the lack of discovery from which to compute actual damages, plaintiff requests that this Court award statutory damages.

The statutory damages provision, § 605(e)(3)(C)(i)(II), provides, in pertinent part:

> [T]he party aggrieved may recover an award of statutory damages for each violation of [§ 605(a)] . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . .

In addition, § 605(e)(3)(C)(ii) states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of [§ 605(a)] . . . .

3

Although § 605 provides little guidance as to how to set damages within the statutory range, "courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events." *Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB) (KAM), 2005 WL 2476264, at *6 (E.D.N.Y. Oct. 7, 2005) (Report and Recommendation of Matsumoto, M.J.) (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999)). First, in cases where the exact number of patrons is unknown, courts have awarded flat sums based on what the court "considers just." *See, e.g., Entertainment by J & J, Inc. v. Suriel*, No. 01 Civ. 11460 (RO), 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000 in statutory damages); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages). Second, "[i]n cases where there is uncontradicted evidence of the number of patrons viewing the match in the establishment, courts have . . . multiplied the number of patrons by a set sum," and have awarded that amount "plus any cover charges or other profits attributable to the unauthorized viewing." *Morales*, 2005 WL 2476264, at *6. Although the "set sum" varies widely, with some courts awarding as little as $20, *see Time Warner Cable v. Sanchez*, No. 02 Civ. 5855 (GBD)(FM), 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003), and some courts awarding as much as $300, *see Garden City Boxing Club, Inc. v. Salcedo*, No. 04 Civ. 5027 (DFE), 2005 WL 2898233, at *2 (S.D.N.Y. Nov. 3, 2005), many courts have found $50 to be the appropriate amount. *See, e.g., Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Services, Inc.*, No. CV-01-3945 (RR), 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002); *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 490; *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997); *Cablevision Sys. Corp. v. 45 Midland Enter., Inc.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994).

By citing to *Taco Rapido* and *Mama Zee* and noting that courts in this district have estimated damages "based on a patron count multiplied by $50," plaintiff implicitly requests that this Court use the latter approach. *See* Brief in Support of Motion for Default Judgment ("Pl. Br.") at 5. Plaintiff has provided a "Piracy Affidavit," attached as Exhibit B to Plaintiff's Affidavit for Default, in which an investigator states that he visited the Gate Way Beer Garden during the fight on December 13, 2003, and took three "head counts" of the patrons, counting 16, 17 and 18 people. However, if this Court simply averages these numbers and multiplies that average by $50, the award would be only $850. Since this is less than the statutory minimum of $1,000, this Court awards plaintiff statutory damages in the amount of $1,000.

Plaintiff is also entitled to enhanced damages. It is beyond question that the § 605(a) violation "was committed willfully and for purposes of direct or indirect commercial advantage." § 605(e)(3)(C)(ii). After all, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Googies Luncheonette*, 77 F. Supp. 2d at 490. However, in awarding enhanced damages, courts have borne in mind that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006).

In this case, it is apparent that Gate Way Beer Garden is a small business. Moreover, according to the "Piracy Affidavit," defendants did not collect a cover charge and had attracted less than 20 patrons at the time the fight began. Since whatever profits defendants reaped from their misdeeds were likely minimal, an award of $10,000 in enhanced damages should more than suffice to prevent defendants from repeating their conduct.

Pre-Judgment Interest

Plaintiff requests that this Court, in its discretion, award pre-judgment interest on the statutory and enhanced damages "at the legal rate." In support of this request, plaintiff cites to a single case – *Kingvision Pay-Per-View, Ltd. v. Ruiz*, No. 04 Civ. 6566 (DC), 2005 WL 589403, at *3 (S.D.N.Y. Mar. 9, 2005) – in which a court, without discussion, awarded the plaintiff pre-judgment interest at the rate of nine percent per annum. *See* Pl. Br. at 9.

Although plaintiff's brief makes it appear the awarding of pre-judgment interest is not at all controversial, the district courts in this circuit are split on the issue of whether pre-judgment interest is appropriate in these cases. Some courts, like *Ruiz*, have granted pre-judgment interest at a rate of nine percent pursuant to N.Y. C.P.L.R. § 5004. *See, e.g., Ruiz*, 2005 WL 589403, at *3; *Morales*, 2005 WL 2476264, at *10 (Report and Recommendation of Matsumoto, M.J.); *Kingvision Pay-Per-View, Ltd. v. Recio*, 02 Civ. 6583 (JSM) (RLE), 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (Report and Recommendation of Ellis, M.J.). However, other courts have declined to award such interest. *See, e.g., CSC Holdings, Inc. v. Khrisat*, No. 04 CV 8592 (LBS) (RLE), 2005 WL 3030838, at *6 (S.D.N.Y. Nov. 8, 2005) (Report and Recommendation of Ellis, M.J.); *Garden City Boxing Club, Inc. v. Rosado*, No. CV-05-1037 (DLI) (JMA), 2005 WL 3018704, at *5 (E.D.N.Y. Oct. 6, 2005) (Report and Recommendation of Azrack, M.J.); *Kingvision Pay-Per-View, Ltd. v. Batista*, CV-05-0614 (RJD) (JMA), 2005 WL 2999427, at *5 (E.D.N.Y. Oct. 6, 2005) (Report and Recommendation of Azrack, J.); *Kingvision Pay-Per-View Ltd. v. Olivares*, 02 Civ. 6588 (JES) (RLE), 2004 WL 744226, at *5 (S.D.N.Y. April 5, 2004)

(Report and Recommendation of Ellis, M.J.).[2]

Having carefully reviewed the conflicting case law, this Court concurs with Magistrate Judge Azrack's view, expressed in *Rosado* and *Batista*, that those cases denying pre-judgment interest are better reasoned. As noted above, *Ruiz* grants pre-judgment interest without discussion. *Recio* simply cites to cases decided by courts in other circuits, while *Morales* discusses only the rate to be awarded, rather than the question of whether pre-judgment interest should be awarded in the first place.

In contrast, *Khrisat* and *Olivares* – both of which are recent cases authored by the same jurist who decided *Recio* – contain a lengthy and persuasive analysis of why pre-judgment interest should not be available. In *Olivares*, which is cited with approval in *Rosado* and *Batista*, Magistrate Judge Ellis reasoned that pre-judgment interest was not recoverable because New York law does not award pre-judgment interest on punitive damages, and statutory damages under § 605 are "analogous to punitive damages in that they are designed to deter others from similar infringing activity." *Olivares*, 2004 WL 744226, at *5. Because this Court agrees with Judge Ellis' reasoning, pre-judgment interest is denied.

Permanent Injunctive Relief

Plaintiff also requests that it be granted "the statutorily mandated injunction." Pl. Br. at 9. However, 47 U.S.C. § 605(e)(3)(B)(i) provides only that a court "may grant temporary and

---

[2]In her brief, plaintiff's counsel does not cite to any of the cases denying pre-judgment interest in her brief, notwithstanding the fact that she herself represented the plaintiffs in *Rosado*, *Batista* and *Olivares*. Although this Court recognizes that these cases are not controlling, and that plaintiff's counsel's conduct therefore does not violate DR 7-106(B)(1) of the Code of Professional Responsibility, this Court finds counsel's failure to cite to these cases or to distinguish them to be unhelpful.

7

final injunctions on such terms as it may deem reasonable to prevent or restrain violations of [§ 605(a)]." Thus, a court "may . . . issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *Main Events/Monitor Productions v. Batista*, No. 96-CV-5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998). Among the "prerequisites" for injunctive relief, a plaintiff must show the absence of an adequate remedy at law. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57 (1975).

Plaintiff has not shown the absence of an adequate legal remedy. In this case, plaintiff availed itself of its remedies under § 605, and has succeeded in obtaining enhanced damages designed to deter defendants from future violations. Defendants have thus been alerted to the unlawful nature of their acts and to the sanctions – both civil and criminal – that may be imposed for future violations. There is nothing to suggest that defendants, who are paying a hefty price for their only documented violation of § 605(a), are likely to repeat their conduct or that the remedies available under § 605 will not be adequate to deal with any further transgressions. Indeed, it is difficult to fathom what this Court's injunction could add to the deterrence offered by § 605. Therefore, plaintiff's motion for a permanent injunction is denied.

Attorneys' Fees and Costs

Section 605(e)(3)(B)(iii) expressly provides that a court "shall direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails." Relying on this language, courts in this Circuit have repeatedly held that "under Section 605 the award of costs and attorneys' fees is mandatory." *Polanco*, 2006 WL 305458, at *4; *see also Morales*, 2005

8

WL 2476264, at *9. However, a party seeking attorneys' fees must nonetheless "support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done." *Morales*, 2005 WL 2476264, at *9 (internal quotations and citations omitted).

In this case, plaintiff's counsel has provided the required documentation. This Court has fully reviewed the time records and finds the five hours spent on this case by the attorney, and the three hours spent by a paralegal, to be entirely reasonable. In addition, although plaintiff's counsel has not attached a copy of her curriculum vitae, this Court is aware, based on its own research in this case, that plaintiff's counsel is very experienced in handling cases of this sort. Her fee of $200 per hour, and the $75 per hour fee she charges for her paralegal's time, are both well within the range awarded in this district. *See, e.g., Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates and $200 to $250 for senior associates" and from $60 to $75 for paralegals). Accordingly, plaintiff is awarded attorneys' fees totaling $1,225.

With respect to costs, plaintiff is entitled to recover both the $150 filing fee and the $140 it cost to serve the summons and complaint on the defendants. However, there is a more substantial question as to whether plaintiff is entitled to recover the $350 fee charged by the investigator who visited the Gate Way Beer Garden on December 13, 2003.

Although a plaintiff is entitled to recover its "full costs" under § 605(e)(3)(B)(iii), many courts have interpreted the term, "full costs," as meaning, "taxable costs." *See, e.g., Sanchez*, 2003 WL 21744089, at *5 (treating investigative fees as taxable costs); *Salcedo*, 2005 WL

2898233, at *3 (including the investigator's fee as part of "costs and disbursements"); *Garden City Boxing Club, Inc. v. Bello*, No. CV-05-1300 (ARR) (JMA), 2005 WL 2496062, at *6 (E.D.N.Y. Sept. 20, 2005) (implying that investigative costs are taxable costs); *Kingvision Pay-Per-View Ltd. v. Cardona*, No. 03 Civ. 3839 (GBD) (FM), 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) (treating investigative costs as taxable costs). Since 28 U.S.C. § 1920, the statute listing the expenses which can constitute "taxable costs," makes "no provision for a prevailing party to be awarded the cost of its investigator," at least two courts have held that investigator's fees cannot be awarded under § 605(e). *See Cardona*, 2004 WL 1490224, at *4; *Sanchez*, 2003 WL 21744089 at *5.

While the term, "full costs," is not defined in the statute, both the plain meaning of the statutory language and the legislative history of § 605(e)(3)(B)(iii) suggest that this term was intended to include expenses other than "taxable costs." First, under 28 U.S.C. § 1920, taxable costs include only the following expenses:

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under [28 U.S.C. § 1923];
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

Because this list "embodies Congress' considered choice" as to what expenses should be taxable, courts are not permitted to allow taxation of costs not included in the list. *Crawford Fitting Co.*

*v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440-42 (1987). Attorneys' fees are not on the list; therefore, "taxable costs" do not include attorneys' fees. However, § 605(e)(3)(B)(iii) implies that "full costs" include "reasonable attorneys' fees." Therefore, the "full costs" permitted under § 605(e)(3)(B)(iii) both differ from, and can exceed, the "taxable costs" recoverable under 28 U.S.C. § 1920.

Second, what little legislative history exists also supports this broad reading of the term, "full costs." Upon approval of the Cable Communications Policy Act of 1984 – the legislation which added the relevant portions of 47 U.S.C. § 605 – the Chairman of the Senate Committee on Commerce, Science, and Transportation issued the following statement:

> It is the intent of the Committee that the power to direct the recovery of all costs under (3)(B)(iii) shall include reasonable investigative fees (related to the action brought) of an aggrieved party.

Statement of Sen. Robert W. Packwood, Chairman of Comm. on Commerce, Science, & Transp., 130 Cong. Rec. § 14286 (daily ed. Oct. 11, 1984), *as reprinted in* 1984 U.S.C.C.A.N. 4742, 4750, 1984 WL 37497 (Leg. Hist.) (1984). Although there is nothing to suggest that Congress as a whole shared the Committee's intent when it enacted the statute at issue, this language at least supports the view that Congress intended "full costs" to include investigative costs.

Even though the awarding of "full costs" is mandatory, *see, e.g., Polanco*, 2006 WL 305458, at *4, "[t]he legislative history for § 605(e) instructs that the court has the power to direct the recovery of investigative fees, not that the court is required to order such an award." *International Cablevision, Inc. v. Noel*, 982 F. Supp. 904, 918 (W.D.N.Y. 1997). In order to recover investigative costs a plaintiff must make a showing similar to that required to recover

11

attorneys' fees. *Id.* ("a request for investigative fees pursuant to § 605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected"). Thus, a plaintiff must document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." *Id.*

In this case, the documentation supplied by plaintiff's counsel is insufficient. Although the investigator's invoice, attached as Exhibit C to Plaintiff's Affidavit for Default, indicates that the investigator charged plaintiff for one hour at an hourly rate of $350, plaintiff has not adduced any evidence concerning the investigator's qualifications. Accordingly, this Court has no basis for assessing the reasonableness of this rate, except to note that $350 per hour exceeds the rate usually awarded to experienced attorneys in this district. *See, e.g., LaBarbera v. J.E.T. Resources, Inc.*, 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005) (rates of $250 to $350 per hour are unreasonably high for legal services in this district).

Moreover, this Court has no basis for determining whether the time allegedly spent on this investigation was reasonable. The investigator's own "Piracy Affidavit" indicates that the investigator was inside Gate Way Beer Garden for 3 minutes, and returned two days later to take two photographs of the exterior of the restaurant. In light of the poor quality of the two photographs attached to the Piracy Affidavit, it seems highly unlikely that the photography took 57 minutes. Accordingly, there is nothing to indicate how the investigator spent most of the hour for which he charged plaintiff.

Because of these deficiencies in the evidence concerning the investigative costs, this Court declines to award such costs. Accordingly, plaintiff is hereby awarded costs of $290.00.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a default judgment is granted. Defendants shall be jointly and severally liable to plaintiff for $1,000 in statutory damages pursuant to § 605(e)(3)(C)(i)(II); $10,000 in enhanced damages pursuant to § 605(e)(3)(C)(ii); $1,225 in attorneys' fees and $290 in costs. Accordingly, the Clerk of Court is directed to enter judgment in favor of plaintiff in the total amount of $12,515. Plaintiff's motions for injunctive relief and for pre-judgment interest are denied.

**SO ORDERED.**

SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
April /3 , 2006